**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

Council of Unit Owners-                     *
Bedford Towne Condominium, trading as
The Marylander,                             *

Plaintiff,                                  *

v.                                          *      Civil Action No. 26-00921-AAQ

Prince George's County, Maryland, et al.,   *

Defendants.                                 *
                                           ***

**MEMORANDUM OPINION**

This is a case concerning a county's efforts to vacate a condominium complex that does not have heat or hot water.  Pending before the Court is Plaintiff's Motion for Preliminary Injunction.  ECF No. 2.  While the parties disagree about several matters, they agree on two important things regarding the present Motion: 1) Plaintiff asks the Court to enjoin enforcement of a state court order which Plaintiff previously contested in state court; and 2) the buildings that are the subject of the state court order and the present Motion lack heat and hot water.  The first reality reduces the likelihood that Plaintiff's procedural due process claim will succeed.  The second reality weakens Plaintiff's claim for preliminary relief under the remaining factors the Court must consider.  Plaintiff has a strong interest in ensuring that the unit owners remain in their apartments.  Additionally, forcing unit owners to move would cause them harm, at a minimum, in the short term.  However, the County has an interest in ensuring that its residents do not reside in housing that fails to comply with basic living standards.  Accordingly, for these reasons, the reasons discussed during the March 23, 2026 Hearing on the Motion, and the reasons discussed below, Plaintiff's Motion for a Preliminary Injunction shall be denied.

**BACKGROUND**

According to Plaintiff's Complaint, the Council of Unit Owners-Bedford Towne Condominium (the "Council"), is the legal entity authorized to govern the affairs of the Bedford Towne Condominium, which is a seventeen-building complex ("Complex") in Prince George's County. ECF No. 1, at 2–3, 5 (citing Md. Code Ann., Real Prop. § 11-109(a)). As the Complaint states, consistent with Maryland law, the Council is comprised of all unit owners. *Id.* at 5. Additionally, pursuant to Maryland statute, the Council has the power "[t]o sue and be sued, complain and defend, or intervene in litigation or administrative proceedings in its own name on behalf of itself or two or more unit owners on matters affecting the condominium[.]" Md. Code Ann., Real Prop. § 11-109(d)(4).

In short, Plaintiff contends that Defendants have encouraged the growth of a homeless encampment which, in November of 2025, allegedly resulted in an individual(s) associated with the encampment breaking into the Complex and vandalizing its boiler. ECF No. 1, at 17. While there is presently insufficient evidence before the Court to determine the veracity of this specific allegation, for the purpose of the present Motion, the parties agree that the boiler is not working and, as a result, the Complex lacks heat and hot water. *See id.* ("Heat and water were lost to approximately 108 units."). As things currently stand, "[n]o quick or cost-effective repair to the [boiler's] water supply and return system is possible." *Id.* As a result, on December 10, 2025, Defendants posted a Notice on nine of the Complex's buildings that they were unfit for human habitation. *Id.* Through December, Defendants issued several Notices of Violation because of, among other things, the failed boiler. *Id.* at 17–19. Regarding two of the buildings, Defendants also cited Plaintiff for "installati[on] of an electrical system with high voltage lines to the identified buildings without permit or inspection." *Id.* at 20. According to Calvin Saunders, code officer

with Prince George's County Department of Permitting, Inspections and Enforcement, who presented testimony to the Court, the placement of piping above the ground to transmit electricity poses an active danger to the public. Additionally, at least one individual was injured because of an exposed pipe.

On January 14, 2026, Defendants filed a Petition in the District Court of Maryland for Prince George's County to enforce compliance with the Prince George's County Code's housing provisions. ECF No. 1-9, at 2, 4–6. The request sought an Order: 1) requiring Plaintiff to remedy the problems identified in the Notices; 2) pay any associated fines; and 3) take the corrective action discussed in the Notices, which included vacation of the premises. *Id.* at 4–6. On January 20, 2026, the State Court issued Plaintiff an Order to Show Cause why the injunctive relief Defendants had requested should not be granted. ECF No. 1-10. On January 22, 2026, the Show Cause Order was served on Plaintiff. ECF No. 1-12, at 2. On January 29, 2026, separate counsel for Plaintiff entered an appearance on behalf of Plaintiff in the state court proceeding, before later representing Plaintiff at hearings in state court on February 2, 2026, and February 18, 2026. ECF No. 1, at 22.

On February 19, 2026, the state District Court issued an Injunction applying to nine of the buildings that make up the Complex. ECF No. 1-14, at 2. Per the terms of the Order, if heat is not restored to the applicable buildings, Defendants must ensure that the units be vacated and remain so until Defendants grant approval for them to be reoccupied. *Id.* at 3. During a hearing before the Court on March 23, 2026, Defendants affirmed that although they have yet to enforce the Order, they intend to do so within fourteen days of the Hearing. The Order concluded by stating that the state court would "retain jurisdiction over this matter for the purpose of enforcing this Order[.]" *Id.* at 4.

On March 5, 2026, Plaintiff filed a Complaint in this Court advancing three claims: 1) Defendants' failure to individually serve each unit owner subject to the State Court's Order with Notice violated the Fourteenth Amendment's guarantee of procedural due process; 2) Defendants' provision of social services to the homeless encampment without the provision of additional services to Plaintiff violated Plaintiff's right to substantive due process; and 3) Defendants failed to adequately train their staff regarding the provision of services to individuals without a home. ECF No. 1, at 25–33.  Additionally, on the same day, Plaintiff sought a temporary restraining order, enjoining "the County, its agents, employees, and the Prince George's County Sherrif's Department from enforcing, executing, or taking any action pursuant to the State Court Injunction Order to compel the vacation of any dwelling unit pending constitutionally adequate notice and an opportunity to be heard as to each affected owner and occupant." *Id.* at 27; *see also id.* (requesting that the Court "PRELIMINARILY AND PERMANENTLY ENJOIN the County, its agents, employees, and the Prince George's County Sherriff's Department from enforcing, executing, or taking any action pursuant to the State Court Injunction Order to compel the vacation of any dwelling unit pending constitutionally adequate notice and an opportunity to be heard as to each affected owner and occupant."); ECF No. 2 (Plaintiff's Motion for a Temporary Restraining Order).  The Complaint did not seek any preliminary relief on account of Plaintiff's second and third claims.  On the same day, the Honorable Theodore D. Chuang held a Case Management Conference, during which the parties: 1) agreed to convert the request for a temporary restraining order to a motion for preliminary injunction; 2) set a schedule for briefing Plaintiff's request for preliminary relief; and 3) agreed that a U.S. Magistrate Judge would preside over all further proceedings in the case.  ECF No. 21, at 5, 6, and 28.  On March 10, 2026, Defendants filed a

Motion to Dismiss the case in its entirety, which also functioned as an Opposition to Plaintiff's Motion for a Preliminary Injunction. ECF No. 11.

On March 12, 2026, the case was reassigned to my chambers for all further proceedings. Likewise, on the same day, Plaintiff filed its Opposition to Defendants' Motion to Dismiss, which also functioned as its Reply in Support of its Motion for a Preliminary Injunction. ECF No. 15. On March 23, 2026, the Court held a hearing on Plaintiff's Motion for a Preliminary Injunction. ECF No. 24. During the Hearing, Defendants presented the testimony of Calvin Saunders, code officer with Prince George's County Department of Permitting, Inspections and Enforcement, who was familiar with the events leading up to the state court Injunction. Plaintiff elected not to present any evidence or witnesses. Accordingly, the only evidence in the record in support of the Motion are the exhibits attached to the Complaint and Plaintiff's Reply in Support of its Motion. Additionally, Plaintiff acknowledged that it had opted to proceed in federal court rather than appealing the state court Order, not because constitutional arguments could not be raised there, but rather because it viewed preliminary relief in federal court as a more expeditious path. On March 24, 2026, Plaintiff filed a Supplemental Memorandum in Support of its Motion addressing only Defendants' arguments as to the applicability of *Younger* abstention and the *Rooker-Feldman* doctrine. ECF No. 27.

## ANALYSIS

A preliminary injunction is an extraordinary remedy intended to protect "the status quo and prevent irreparable harm" during the pendency of a lawsuit. *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013) (quoting *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517,525 (4th Cir. 2003), *abrogated on other grounds by eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006)). A preliminary injunction shall "be granted only if the moving party clearly establishes entitlement to

the relief sought." *Fed. Leasing, Inc. v. Underwriters at Lloyd's*, 650 F.2d 495, 499 (4th Cir. 1981).

A plaintiff seeking a preliminary injunction must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Courts considering whether to impose preliminary injunctions must separately consider each *Winter* factor. *Pashby*, 709 F.3d at 321.

### I. Likelihood of Success on the Merits

Defendants assert that Plaintiff is unlikely to prevail on its procedural due process claim for several reasons, including that Plaintiff lacks standing, *Younger* abstention requires dismissal, and the *Rooker-Feldman* doctrine bars collateral review. ECF No. 11-1, at 5–10. The Court, however, need only address one argument because of its clear applicability. Because Plaintiff explicitly asks this Court to enjoin enforcement of a state court order, the *Rooker-Feldman* doctrine bars Plaintiff's procedural due process claim.

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)). Accordingly, "when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

The *Rooker-Feldman* doctrine prevents lower federal courts from exercising appellate jurisdiction over state court judgments. *Lance v. Dennis*, 546 U.S. 459, 460 (2006); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "[J]urisdiction to review such

6

decisions lies exclusively with superior state courts and, ultimately, the United States Supreme Court." *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198 (4th Cir. 2000) (quoting *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997)). That is because Congress vested *only* the Supreme Court with jurisdiction over appeals from final state-court judgments. 28 U.S.C. § 1257; *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) (holding that "[r]eview of such judgments may be had only in [the Supreme Court]"); *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970) (explaining that Congress has not given "lower federal courts . . . any power to review directly cases from state courts").

"[T]he *Rooker-Feldman* doctrine is narrow and focused, 'confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Thana v. Bd. of License Comm'rs for Charles Cnty.*, 827 F.3d 314, 319 (4th Cir. 2016) (quoting *Lance*, 546 U.S. at 464). "In other words, the doctrine simply precludes federal district courts from exercising what would be, in substance, appellate jurisdiction over final state-court judgments." *Hulsey v. Cisa*, 947 F.3d 246, 250 (4th Cir. 2020).

Plaintiff's lawsuit "complain[s] of an injury caused by the state-court judgment and seek[s] federal-court review and rejection of that judgment." *Skinner v. Switzer*, 562 U.S. 521, 531 (2011). The parties do not dispute this point. Plaintiff's Motion, as well as Plaintiff's argument during the Hearing on the Motion, specifically ask the Court to enjoin the state court's Order because Plaintiff believes the Order does not provide sufficient process under the U.S. Constitution. *See, e.g.*, ECF No. 1, at 2 ("This action most urgently concerns the owners and residents of one hundred and eight (108) condominium units who face mass physical removal from their homes pursuant to a state court order obtained by the County without notice to, or any opportunity to be heard by, the

individuals whose property rights that order effectively extinguishes."); *id.* at 27 (requesting that the Court "PRELIMINARILY AND PERMANENTLY ENJOIN the County, its agents, employees, and the Prince George's County Sherriff's Department from enforcing, executing, or taking any action pursuant to the State Court Injunction Order to compel the vacation of any dwelling unit pending constitutionally adequate notice and an opportunity to be heard as to each affected owner and occupant"). Although, *Rooker-Feldman* is a narrow doctrine, *Exxon*, 544 U.S. at 291, it applies where the Plaintiff clearly articulates that the Order caused the injury about which it complains, and, as a result, it asks the Court to enjoin the state court from enforcing its own Order. *See Smalley v. Shapiro & Burson, LLP*, 526 F. App'x 231, 236 (4th Cir. 2013) (holding that *Rocker-Feldman* applies "if in order to grant the federal plaintiff the relief sought, the federal court must determine that the [state] court judgment was erroneously entered or must take action that would render the judgment ineffectual" (citation omitted)).

This Court's conclusion is not unique. "Courts have consistently applied the *Rooker Feldman* doctrine to dismiss claims requesting federal district court review of a state court's eviction and foreclosure proceedings." *Sanders v. Cohn, Greenberg & Deutsch, LLC*, No. DKC 15 1571, 2016 WL 223040, at *4 (D. Md. Jan. 19, 2016) (quoting *Nott v. Bunson*, No. WMN-09-2613, 2009 WL 3271285, at *2 (D. Md. Oct. 9, 2009)) (collecting cases); *see also Wenegieme v. Nadel*, No. GLR-14-2543, 2015 WL 11090389, at *2 (D. Md. Apr. 12, 2015), *aff'd per curiam*, 619 F. App'x 261 (4th Cir. 2015) (applying *Rooker-Feldman* where Plaintiffs argued "the state court's judgment of foreclosure was illegal and . . . attempt[ed] to litigate the arguments previously presented to the state court in the foreclosure action").

Plaintiff, nonetheless, argues that *Rooker-Feldman* does not apply because the individual unit owners affected were not party to the proceeding in state court that led to the issuance of the

8

injunction.  ECF No. 27, at 2; ECF No. 15, at 14. *See also Lance*, 546 U.S. at 465 ("[W]e have held *Rooker–Feldman* inapplicable where the party against whom the doctrine is invoked was not a party to the underlying state-court proceeding.").  This argument suffers from a fatal flaw. Although the individual unit owners were not parties to the first lawsuit, *see* ECF No. 1-9, at 4 (listing the Respondent as "Council of Unit Owners-Bedford Towne Condominium t/a The Marylander); ECF No. 1-11, at 2 (same), they are not parties to the present lawsuit either, *see* ECF No. 1, at 2 (describing Plaintiff in the Complaint as "Council of Unit Owners-Bedford Towne Condominium, trading as the Marylander").  Rather, the present party in this case is the Council of Unit Owners, who also were—and are—parties to the state court proceeding in which the Injunction at issue was ordered.  Accordingly, rather than being invoked against a party that was not present in the first lawsuit, it is being invoked against the same party that was in fact present in the first lawsuit.

Confronted with this fact, Plaintiff argued at the Hearing that when it appeared in state court, it had no reason to know that it had a responsibility to represent the interests of the condominium owners.[1]  Plaintiff has failed to present any legal authority for this distinction or any facts substantiating the claim as to Plaintiff's expectations at the time.  This is perhaps for good reason as it conflicts with the applicable law and facts of the case.  Pursuant to Maryland's Real Estate Act, the Council, by definition, comprises all unit owners, represents unit owners, and has the authority to appear in litigation on the owners' behalf. Md. Code Ann., Real Prop. § 11-109(a),

---

[1] In its Supplement, Plaintiff advances a slightly modified version of this argument.  Plaintiff argues that the Supreme Court has rejected the notion that *Rooker-Feldman* can be applied against a non-party because another party represents its interests.  ECF No. 27, at 2–3.  The argument has no applicability to this case, because *Rooker-Feldman* is not being applied against the unit owners. The individual unit owners are not a party to this case.  Rather, it is being applied against the Council—the same party that was present in the state court proceeding.

(d)(4).    Further, as Plaintiff's Complaint acknowledges, the Council was served with the Defendants' Amended Petition which requests, like the original Petition, relief in accordance with the Violation Notices and discusses vacation of the premises.  *See* ECF No. 1-12, at 2 (affidavit of service of Amended Petition on the Council on January 22, 2026); ECF No. 1-11, at 3 (asking for corrective action consistent with the Violation Notices); *id.* at 5 ("Structure(s) shall be VACATED IMMEDIATELY[.]").   Accordingly, Plaintiff should have been and had a responsibility to be prepared to represent the unit owner's interests.   That Plaintiff may not have been prepared to adequately represent the unit owner's interest in the state court proceeding does not provide a basis for this Court to vacate the state court's Order.

## II.    Irreparable Harm

A plaintiff need not establish a "certainty of success," but must make a "clear showing" that he is likely to succeed at trial.  *Pashby*, 709 F.3d at 321.   "Similarly, a plaintiff must demonstrate more than just a 'possibility' of irreparable harm."  *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017).   "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).  "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.   The possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm."  *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoting *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (1958)).   A plaintiff must overcome the presumption that a preliminary injunction will not issue when the harm suffered can be remedied by money damages

at the time of judgment.  *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994).

Plaintiff arguably has satisfied this standard.  Plaintiff's argument as to the irreparable harm, if an injunction is not issued, is brief:

> Forced removal from one's home cannot be remedied by money damages.  Upon information and belief, the County Executive publicly announced at a "Listening Station" that removal of residents will begin on March 6, 2026.  Upon information and belief, among those facing displacement are residents with pending immigration matters dependent on uninterrupted mail receipt, and potentially active duty servicemembers entitled to return from service to find their homes intact.  These harms, once inflicted, cannot be undone.

ECF No. 15, at 20–21.  Although the Court presented Plaintiff the opportunity to provide any evidence or witnesses supporting these allegations at the Hearing, Plaintiff failed to advance any evidentiary support.  Regardless, at the hearing, Defendants acknowledged that were the Court to deny Plaintiff's request for a preliminary injunction, it would force vacation of the relevant units within two weeks.  Accordingly, the Court agrees that the unit owners, who make up the Council, face the threat of irreparable harm because of forced removal from their homes, even if the attendant consequences Plaintiff has alleged do not occur.  *See Mayrant v. Norfolk Redevelopment & Hous. Auth.*, 801 F. Supp. 3d 601, 622 (E.D. Va. 2025) ("The prospect of losing one's home, and the intangible harms associated with homelessness, is an irreparable injury for which there is no adequate remedy at law."); *Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307, 328 (E.D.N.Y. 2012) (finding that threat of eviction constitutes irreparable harm); *Johnson v. Macy*, 145 F. Supp. 3d 907, 919 (C.D. Cal. 2015) (same).

The Court assumes that at least some of the unit owners are living in the units from which individuals would be forced to move, however Plaintiff has presented no evidence on this point.

11

Accordingly, to the extent that unit owners are not residents forced to relocate, the unit owners' harm would be different and potentially less, i.e. the loss of rental income. *See Hughes Network Sys., Inc.*, 17 F.3d at 694 ("Mere injuries, however substantial, in terms of money, time and energy necessarily expanded in absence of a stay, are not enough."); *Mount Clemens Inv. Grp., LLC v. Borman's Inc.*, No. 10-12679, 2010 WL 3998095, at *5 (E.D. Mich. Oct. 12, 2010) (denying preliminary injunction where the plaintiff alleged harm based on loss of rent, but plaintiff was able to seek money damages).

### III.    Balance of Harms

As the Fourth Circuit has explained:

> Even if Plaintiffs are likely to suffer irreparable harm in the absence of a preliminary injunction, we still must determine that the balance of the equities tips in their favor, "pay[ing] particular regard for the public consequences in employing the extraordinary remedy of injunction." This is because "courts of equity may go to greater lengths to give 'relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.'"

*Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554, 602 (4th Cir. 2017) (first quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982); then quoting *E. Tenn. Nat. Gas Co. v. Sage*, 361 F.3d 808, 826 (4th Cir. 2004)).

While the Plaintiff has a legitimate interest in ensuring that the unit owners it represents remain in their residences, the County also has a legitimate interest in ensuring that its residents reside in buildings that are fit for human habitation. *See Devines v. Maier*, 728 F.2d 876, 886 (7th Cir. 1984) ("By declaring a dwelling uninhabitable, and issuing an order to temporarily vacate, the City of Milwaukee is performing its regulatory duty to protect the health, safety, morals, and general welfare of the public."). Were the County not to enforce its housing provisions, residents would be subject to the desires of landlords, as well as condominium associations, who may

provide substandard housing to individuals who cannot afford other options. *See Lattimore v. Nw. Co-op. Homes Ass'n*, No. Civ.A. 90–0049 (RCL), 1990 WL 10521534, at *7 (D.D.C. Mar. 26, 1990) ("The purpose of such regulations is to provide decent affordable housing for low-income families."). The parties do not dispute that the properties at issue lack working heat and hot water. Defendants also presented testimony from a County employee that to account for a lack of electricity at some buildings, Plaintiff has arranged for electricity to be provided through an alternative arrangement without proper permitting. As a result, the piping which currently rests above ground poses an active danger to residents. At least one resident has already been injured on improperly exposed pipes. Accordingly, the balance of interests is, at best, in equipoise.

## IV.    Public Interest

Finally, before granting a motion for preliminary injunction, the court must find the relief requested is in the public interest. *Winter*, 555 U.S. at 20. The public interest is in equilibrium for the reasons stated above. While the public interest favors keeping individuals from being forced from their residences, even if temporarily, it also favors the enforcement of housing regulations which serve the public good.[2] *See Jarvis-Orr v. Township of Hartford*, No. 1:11–cv–1066, 2012 WL 4463871, at *9 (W.D. Mich. Aug. 9, 2012) ("The public has a strong interest in their local government's enforcement of housing regulations designed to protect the public health and welfare.").

---

[2] Plaintiff argues that the public interest favors entrance of an injunction because enforcement of constitutional rights serves the public good. ECF No. 15, at 21. While this is generally true, the Court has already determined that Plaintiff is unlikely to succeed on its procedural due process claim.

**CONCLUSION**

Because Plaintiff has failed to show that it is likely to succeed on its procedural due process claim; and the balance of harms and public interest do not clearly support entry of a preliminary injunction, Plaintiff has failed to meet the relevant legal standard.  Accordingly, for the reasons stated above, Plaintiff's Motion for Preliminary Injunction is, hereby, denied.  Plaintiff may seek leave to file an Amended Complaint within fifteen days.

A separate implementing Order shall follow.

Date: March 27, 2026                          _____/s/_____

                                                         Ajmel A. Quereshi
                                                         U.S. Magistrate Judge